# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### WESTERN DIVISION

MICHAEL JOHN OLSON,

        Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

        Defendant.

No. C14-4086-LTS

**MEMORANDUM
OPINION AND ORDER**

---

    Plaintiff Michael John Olson seeks judicial review of a final decision of the Commissioner of Social Security (Commissioner) denying his applications for Social Security Disability benefits (DIB) and Supplemental Security Income benefits (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401 *et seq*. (Act). Olson contends that the administrative record (AR) does not contain substantial evidence to support the Commissioner's decision that he was not disabled during the relevant time period. For the reasons that follow, the Commissioner's decision will be affirmed.

## I.    BACKGROUND

    Olson was born in 1960 and has completed the ninth grade. AR 200, 233. He has past work as a warehouse worker, order control clerk, salesperson, janitor, machine helper and deliverer. AR 255, 304. Olson applied for DIB and SSI on August 17, 2011, alleging disability since January 1, 2010, due to agoraphobia, ADHD, depression and fibromyalgia. AR 228, 233.

    Olson's applications were denied initially and on reconsideration. AR 125, 136. He then requested a hearing before an Administrative Law Judge (ALJ). AR 154. ALJ Hallie Larson conducted a hearing on June 21, 2013, during which Olson and a vocational

expert (VE) testified. AR 36-64. On July 10, 2013, the ALJ issued a decision in which she found that Olson was not disabled. AR 12-30. The Appeals Council denied Olson's request for review on August 8, 2014. AR 1. The ALJ's decision thus became the final decision of the Commissioner. AR 1; 20 C.F.R. §§ 404.981, 416.1481.

Olson filed a complaint (Doc. No. 3) in this Court on October 7, 2014, seeking review of the Commissioner's decision. The case was originally assigned to Senior United States District Judge Donald O'Brien, who conducted a hearing on April 15, 2015. Unfortunately, Judge O'Brien passed away before he was able to issue a decision. The case was reassigned to me on February 17, 2016. The parties have briefed the issues and the matter is fully submitted.

## II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF

A disability is defined as "the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), *accord* 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. A claimant has a disability when, due to his physical or mental impairments, the claimant "is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to get work, lack of opportunities in the local area, economic conditions, employer hiring practices or other factors, the ALJ will still find the claimant not disabled. 20 C.F.R. §§ 404.1566(c)(1)-(8), 416.966(c)(1)-(8).

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Id.* §§ 404.1520, 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit. 20 C.F.R. §§ 404.1572(a), 404.1572(b).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities." *Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 404.1520(c), 404.1521(a), 416.920(c), 416.921(a).

The ability to do basic work activities is defined as having "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying or handling; (2) capacities for seeing, hearing and speaking; (3) understanding, carrying out and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers and usual work situations; and (6) dealing with changes in a routine work setting. *Id.* §§ 404.1521(b)(1)(6), 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will determine its medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled regardless of age, education and work experience. 20 C.F.R. §§ 404.1520(a)(4)(iii), 404.1520(d), 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity (RFC) and the demands of his past relevant work. If the claimant cannot do his past relevant work then he is considered disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545(a)(4), 416.920(a)(4)(iv), 416.945(a)(4). Past relevant work is any work the claimant has done within the past 15 years of his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.* § 416.960(b)(1). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). The claimant is responsible for providing the evidence the Commissioner will use to determine claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *Id.* If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled. *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can make the adjustment, then the Commissioner will find the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). At step five, the Commissioner has the responsibility of developing the claimant's complete medical history before making a determination about the existence of a disability. *Id.* §§ 404.145(a)(3), 416.945(a)(3). The burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

If after these five steps the ALJ has determined the claimant is disabled but there is medical evidence of substance use disorders, the ALJ must decide if that substance use is a contributing factor material to the determination of disability. 42 U.S.C. §§ 423(d)(2)(C). The ALJ must then evaluate the extent of the claimant's limitations without the substance use. *Id.* If the limitations would not be disabling, then the disorder is a contributing factor material to determining disability and the claimant is not disabled. 20 C.F.R. §§ 404.1535, 416.935.

### III.    THE ALJ'S FINDINGS

The ALJ made the following findings:

(1)    The claimant meets the insured status requirements of the Social Security Act through September 30, 2010.

(2)    The claimant has not engaged in substantial gainful activity since January 1, 2010, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

(3)    The claimant has the following severe impairments: attention deficit hyperactivity disorder by history; depressive disorder; history of bursitis and rotator cuff tear (left); anxiety disorder; cervical radiculopathy (20 C.F.R. 404.1520(c) and 416.920(c)).

(4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

(5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following additional limitations: The claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The claimant is limited to sitting (with normal breaks) for a total of 6 hours of an 8-hour workday. The claimant is limited to standing and/or walking (with normal breaks) for a total of 6 hours of an 8-hour workday. The claimant is limited to never climbing ladders, ropes or scaffolds; and occasionally climbing stairs and ramps, balancing, stooping, kneeling, crouching and crawling. The claimant is limited to rarely reaching overhead with the bilateral upper extremities. The claimant must avoid concentrated exposure to work hazards such as dangerous moving machinery and unprotected heights. The claimant is limited to understanding, remembering and carrying out short, simple instructions. The claimant is limited to interacting appropriately with coworkers on a brief and superficial basis only and no contact with the public as part of the job.

(6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)    The claimant was born on April 30, 1960 and was 49 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. (20 CFR 404.1563 and 416.963).

(8)    The claimant has a limited education and is able to communicate in English. (20 CFR 404.1564 and 416.964).

(9)    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from January 1, 2010, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 18-30.

## IV.    *THE SUBSTANTIAL EVIDENCE STANDARD*

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion." *Lewis*, 353 F.3d at 645. The Eighth Circuit

explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal." *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994).

In determining whether the Commissioner's decision meets this standard, the court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Wester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). The court considers both evidence which supports the Commissioner's decision and evidence that detracts from it. *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010). The court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The court, however, does not "reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (citing *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the court finds it "possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases where the court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The court may not reverse the Commissioner's decision "merely

because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion.").

## V.    DISCUSSION

As set forth above, the ALJ made a determination at Step Five that Olson is not disabled because he can perform certain jobs that exist in significant numbers in the national economy.   AR 32.   Olson contends that this decision is not supported by substantial evidence in the record because (1) the RFC is not based upon substantial evidence, (2) the ALJ failed to properly evaluate the medical opinion evidence and (3) the ALJ failed to evaluate his credibility properly.

### A.    *The RFC Determination*

Olson contends that the ALJ's RFC determination was not based upon substantial evidence because the ALJ relied on non-treating doctors who examined Olson once, or not at all, to form his RFC.   The Commissioner disagrees.

#### 1.    *Applicable Standards*

The claimant's RFC is "what [the claimant] can still do" despite his or her physical or mental "limitations."   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).   "The ALJ must determine a claimant's RFC based on all of the relevant evidence."   *Fredrickson v. Barnhart*, 359 F.3d 972, 976 (8th Cir. 2004).   This includes "an individual's own description of [his] limitations."   *McGeorge v. Barnhart*, 321 F.3d 766, 768 (8th Cir. 2003) (quoting *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).   The claimant's RFC "is a medical question," *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001), and must be supported by "some medical evidence."   *Dykes v. Apfel*, 223 F.3d 865, 867 (8th

Cir. 2000) (per curiam). The medical evidence should address the claimant's "ability to function in the workplace." *Lewis*, 353 F.3d at 646. The ALJ is not required to mechanically list and reject every possible limitation. *McCoy v. Astrue*, 648 F.3d 605, 615 (8th Cir. 2011). Furthermore, "[a]n ALJ's failure to cite specific evidence does not indicate that such evidence was not considered." *Wildman v. Astrue*, 596 F.3d 959, 966 (8th Cir. 2010) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)). "[T]he ALJ may reject the conclusions of any medical expert, whether hired by a claimant or by the government, if inconsistent with the medical record as a whole." *Bentley v. Shalala*, 52 F.3d 784, 787 (8th Cir. 1995). The RFC must only include those impairments which are substantially supported by the record as a whole. *Goose v. Apfel*, 238 F.3d 981, 985 (8th Cir. 2001); *see also Forte v. Barnhart*, 377 F.3d 892, 897 (8th Cir. 2004).

An ALJ has an independent duty to fully and fairly develop the record. *See Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) (noting that the non-adversarial nature of administrative hearings make it incumbent upon the ALJ to fully and fairly develop the record.). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted). The ALJ must be able to rely on some medical evidence that describes the claimant's "functional limitations with sufficient generalized clarity to allow for understanding of how those limitations function in a work environment." *Cox*, 495 F.3d at 620 n.6. If the medical evidence on the record is sufficient to make a disability determination, the ALJ need not order additional medical examinations to develop the record further. *See Kamann v. Colvin*, 721 F.3d 945, 950 (8th Cir. 2013).

Although the RFC assessment is based on medical evidence, it is ultimately an administrative decision reserved to the Commissioner. *See Cox*, 495 F.3d at 619-20 (8th Cir. 2007). Thus, "[A]n ALJ is permitted to issue a decision without obtaining additional

medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Agan v. Astrue*, 922 F. Supp. 2d 730, 755 (N.D. Iowa 2013) (quoting *Naber*, 22 F.3d at 189); *Barrett v. Shalala*, 38 F.3d 1019, 1023 (8th Cir. 1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."). The ALJ does not have to "seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped." *Stormo*, 377 F.3d at 806.

### 2. The ALJ's Findings

As noted above, the ALJ found that Olson had the RFC to perform light work with the following limitations:

> The claimant is limited to lifting and/or carrying 20 pounds occasionally and 10 pounds frequently. The claimant is limited to sitting (with normal breaks) for a total of 6 hours of an 8-hour workday. The claimant is limited to standing and/or walking (with normal breaks) for a total of 6 hours of an 8-hour workday. The claimant is limited to never climbing ladders, ropes, or scaffolds; and occasionally climbing stairs and ramps, balancing, stooping, kneeling, crouching, and crawling. The claimant is limited to rarely reaching overhead with the bilateral upper extremities. The claimant must avoid concentrated exposure to work hazards such as dangerous moving machinery and unprotected heights. The claimant is limited to understanding, remembering, and carrying out short, simple instructions. The claimant is limited to interacting appropriately with coworkers on a brief and superficial basis only and no contact with the public as a part of the job.

AR 22. The ALJ gave some weight to the opinion of Stephen Veit, M.D., a treating source, that Olson could lift 20 pounds occasionally and 10 pounds frequently with rare overhead reaching with the bilateral upper extremities. AR 25. However, the ALJ found that the medical record did not support Dr. Veit's findings that Olson would require numerous unscheduled breaks and excessive absences from work. *Id.* The ALJ found

that due to inconsistencies in Dr. Veit's opinion, the conservative nature of Olson's treatment and Olson's stated activities of daily living, Dr. Veit's opinion was not entitled to controlling weight. *Id.*

The ALJ gave considerable weight to the opinion of Brian Fulton, D.O. *Id.* However, the ALJ found that the record as a whole supported a greater limitation with regard to interaction with the general public and coworkers than Dr. Fulton found. *Id.* at 26. The ALJ gave some weight to the opinions of state agency medical consultants as to Olson's physical limitations, but found that the lifting limitations reported by the state agency physicians were not supported by the record. *Id.* Additionally, the ALJ gave some weight to the opinion of state agency psychological consultants but gave more weight to Dr. Fulton's opinion. *Id.* Finally, the ALJ considered a letter from David Wurth, D.C., and noted that as a chiropractor, Dr. Wurth was not an acceptable medical source. *Id.* at 27. The ALJ also considered statements from Olson's sister indicating that Olson did his own cooking, house and yardwork, cleaning and laundry. *Id.*

### 3.   *Summary of the Medical Evidence*

The record contains evidence from numerous sources, including (a) Dr. Fulton, (b) Dr. Veit, (c) Jeannett Tan Wu, M.D., (d) Dr. Wurth and (e) state agency consultants Stephen Elliott, D.O., Jan Hunter, D.O., Sandra Davis, Ph.D. and Dee Wright, Ph.D. The record also contains a third-party function report and Olson's pain questionnaire.

### a.   *Treating and examining sources*

**Dr. Fulton**. Dr. Fulton provided treatment at the Plains Area Mental Health Center beginning in 2007. AR 238. He completed a medical source statement dated June 1, 2013. AR 447-48. Dr. Fulton reported that Olson had difficulty sustaining focus, has the ability to perform 1-2 step or simple tasks on a sustained basis, is moderately impaired in maintaining a normal work day and work week, is minimally impaired in his

ability to work and interact with supervisors, co-workers or the public, is moderately impaired in accepting changes in the workplace and has satisfactory judgment in the workplace. AR 447. Dr. Fulton noted an average Global Assessment Functioning (GAF) score of 60 during the period he treated Olson.[1]  *Id.*  Dr. Fulton left the portion of the statement concerning absences from work blank. AR 448.

**Dr. Veit**. Dr. Veit treated Olson intermittently for shoulder issues beginning March 26, 2010. AR 445. He completed a medical source statement dated June 18, 2013. *Id.* Dr. Veit opined that Olson could lift up to 20 pounds for 2 1/2 hours a day, sit for 15 minutes at a time for a total of 2 1/2 hours during an eight-hour work day, stand for 30 minutes at a time for a total of 2 1/2 hours during an eight-hour work day, walk for 200 feet at a time up to four times during eight-hour work day, would need "near normal heat & humidity," would require at least three unscheduled breaks[2] and would miss more than four days of work a month due to his impairments or treatment. *Id.*

**Dr. Wu**. Dr. Wu, a consultative examiner, examined Olson on March 30, 2012. She found that Olson had ADHD, depression and chronic pain. AR 376. In addition, Dr. Wu wrote that Olson stated he could lift 30 pounds every hour for about two minutes, stand for an hour, move about for 1 to 1 1/2 hours, walk for 1 to 1 1/2 hours, sit for 45 minutes to an hour and could stoop, climb steps, kneel and crawl. *Id.* Dr. Wu completed

---

[1] A GAF score represents a clinician's judgment of an individual's overall ability to function in social, school or occupational settings, not including impairments due to physical or environmental limitations. *See American Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders* 34 (4th ed.) (DSM–IV). A GAF score of 51-60 indicates the individual has moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (*e.g.*, few friends, conflicts with peers or co-workers). *Id.*

[2] As I will discuss further, *infra*, Dr. Veit's opinion as to unscheduled breaks is not entirely clear, as he wrote "at least 3/hr." AR 445.

a range of motion chart listing 5/5 for grip strength, upper extremity muscle strength and lower extremity muscle strength. AR 377-78. She also completed a fibromyalgia evaluation sheet noting positive findings for all but one of the possible fibromyalgia control points. AR 379.

### b.    State agency physicians

**Dr. Elliott**. Dr. Elliott reviewed the medical records and provided an RFC assessment dated April 18, 2012. AR 86. He found that Olson was able to occasionally lift or carry 50 pounds, frequently lift or carry 25 pounds, stand and/or walk (with normal breaks) for a total of 6 hours in an 8-hour workday, sit (with normal breaks) for a total of 6 hours in an 8-hour workday and had no limitations on pushing or pulling. *Id.* Additionally, Dr. Elliott opined that Olson's claimed limitations were not consistent with Dr. Wu's consultative examination or with his reported activities of daily living. AR 87.

**Dr. Hunter**. Dr. Hunter reviewed the medical records on reconsideration and provided an opinion as to Olson's RFC dated July 16, 2012. AR 117-19. Dr. Hunter's opinion matches that of Dr. Elliott.

**Dr. Davis**. Dr. Davis reviewed the medical records and provided a mental RFC assessment dated March 7, 2012. AR 88-90. Dr. Davis opined that Olson was not significantly limited when remembering locations or work-like procedures, remembering and carrying out short and simple instructions, performing activities within a schedule, maintaining regular attendance and being punctual within customary tolerances, making simple work-related decisions, asking simple questions or requesting assistance, maintaining socially appropriate behavior and cleanliness, being aware of normal hazards and taking appropriate precautions and using public transportation to travel to unfamiliar places. *Id.* at 88-89. Dr. Davis found moderate limitations in Olson's ability to understand, remember and carry out detailed instructions, maintain attention and concentration for extended periods, sustain an ordinary routine without special

supervision, work in coordination with or in proximity with others without being distracted by them, complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, interact with the general public, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, respond appropriately to changes in the work setting and to set realistic goals or make plans independently of others. *Id.*

**Dr. Wright.** Dr. Wright reviewed the medical records on reconsideration and provided an opinion as to Olson's mental RFC dated July 24, 2012. AR 119-22. Dr. Wright's opinion matches that of Dr. Davis.

### c.    Other source evidence

**Dr. Wurth**. Dr. Wurth treated Olson at Wurth Chiropractic Center. AR 449. He submitted a letter dated June 25, 2013, stating that Olson had spinal conditions, permanent and chronic spinal and extremity conditions, neck pain that radiates into his shoulder, pain affecting his sleep, good days and bad days, an inability to perform daily activities and pain that will limit him the rest of his life. *Id.* During treatment, Dr. Wurth noted that Olson's prognosis was good. AR 393-423. Dr. Wurth's notes also indicate that Olson continually described his pain as being moderate. *Id.*

### 4.    Analysis

Olson argues that the ALJ gave state agency opinions controlling weight, despite the ALJ's statement that they received "some weight." The Commissioner argues that the ALJ's RFC is supported by substantial evidence and that the ALJ properly explained the weight she gave to each medical source.

I find the ALJ properly evaluated all the evidence and provided an RFC supported by substantial evidence in the record. Dr. Fulton, a treating source, opined that Olson was able to perform one or two step tasks (as well as simple tasks) on a sustained basis. AR 447. He did not indicate that Olson would require significant absences. AR 448. In addition, the ALJ adopted the finding of Dr. Veit, another treating source, that Olson could lift up to 20 pounds. AR 25, 445. However, the ALJ found that Dr. Veit's opinion of excessive absenteeism was not supported by the record. As I will explain in Section V(B)(2), *infra*, the record does not support Dr. Veit's opinion as to absenteeism.

Moreover, the record contains opinions of state agency consultants who reviewed the records and determined that Olson could perform light work in accordance with the ALJ's RFC. AR 86-87, 88-90, 117-119, 119-121. The ALJ considered these opinions and determined they were entitled to some weight as they were somewhat consistent with the record. However, the ALJ found that these opinions were less consistent with the record with regard to Olson's lifting limitations and, therefore, relied on Dr. Veit's opinion for those limitations.

Additionally, Dr. Wu's evaluation supports portions of the RFC. Dr. Wu found a full range of motion in Olson's shoulder and 5/5 lower extremity muscle strength. AR 378. Dr. Wu also noted Olson's own report that he could lift 30 pounds, stand for 1 hour, move about for 1 to 1 1/2 hours, sit for 1 to 1 1/2 hours, sit for 45 minutes to an hour, stoop, climb steps, kneel, crawl and has no problems hearing or speaking. AR 376.

Olson's own statements, along with the third-party function report, also support the RFC. Olson stated he was able to care for himself, live on his own, do his own laundry and shopping, mow a 3-acre yard on a riding mower and clean out a farm house. AR 48-49. Olson's sister's third-party function report supports these statements. AR 241-433.

Thus, the RFC is supported by the opinions of Dr. Fulton, Dr. Veit and the state agency consultants, as well as by Dr. Wu's report and Olson's own statements. While Olson argues that the RFC is erroneous because it is not entirely consistent with all opinions from his treating sources, that is not the test. The RFC determination is not based exclusively on the medical evidence, or on any one physician's opinion, but on the record as a whole. *Cox*, 495 F.3d at 619; *see also Pearsall v. Massanari*, 274 F.3d 1211, 1218-19 (8th Cir. 2001) ("It is the ALJ's responsibility to determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians and others, and claimant's own descriptions of his limitations."). Because the record as a whole supports the ALJ's RFC determination, I find no error in the ALJ's RFC determination.

## B.    *Opinion Evidence*

Olson contends that the ALJ improperly credited the state agency consultants and did not give the proper weight to treating sources. The Commissioner argues that the ALJ properly evaluated the opinion evidence and provided good reasons for discounting portions of the treating source opinions.

### 1.    *Applicable Standards*

"In deciding whether a claimant is disabled, the ALJ considers medical opinions along with 'the rest of the relevant evidence' in the record." *Wagner v. Astrue*, 499 F.3d 842, 848 (8th Cir. 2007) (quoting 20 C.F.R. § 404.1527(b)). "Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Other relevant evidence includes medical records, observations of treating physicians and

others, and an individual's own description of his limitations. *McKinney*, 228 F.3d at 863.

Medical opinions can come from a treating source, an examining source or a non-treating, non-examining source (typically a state agency medical consultant who issues an opinion based on a review of medical records). Medical opinions from treating physicians are entitled to substantial weight. *Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000). A treating physician's opinion "does not automatically control or obviate the need to evaluate the record as [a] whole." *Leckenby v. Astrue*, 487 F.3d 626, 632 (8th Cir. 2007). Nonetheless, if the ALJ finds that a treating physician's medical opinion as to the nature and severity of the claimant's impairment is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] record, [the ALJ] will give it controlling weight." 20 C.F.R. § 416.927(c)(2). "When an ALJ discounts a treating physician's opinion, he should give good reasons for doing so." *Brown v. Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2010). However, a treating physician's conclusion that an applicant is "disabled" or "unable to work" addresses an issue that is reserved for the Commissioner and therefore is not a "medical opinion" that must be given controlling weight. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

At the other end of the medical-opinion spectrum are opinions from non-treating, non-examining sources: "The opinions of non-treating practitioners who have attempted to evaluate the claimant without examination do not normally constitute substantial evidence on the record as a whole." *Shontos v. Barnhart*, 328 F.3d 418, 427 (8th Cir. 2003). This does not mean, however, that such opinions are to be disregarded. Indeed, "an ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence." *Prosch v. Apfel*, 201 F.3d 1010, 1014 (8th Cir. 2000) (internal quotations and citations omitted). Unless a treating source's opinion is given controlling weight, the ALJ "must

explain in the decision the weight given to the opinions of a State agency medical or psychological consultant." 20 C.F.R. § 416.927(e)(2)(ii).

In the middle of the spectrum are opinions from consultative examiners who are not treating sources but who examined the claimant for purposes of forming a medical opinion. Normally, the opinion of a one-time consultative examiner will not constitute substantial evidence, especially when contradicted by a treating physician's opinion. *Cantrell v. Apfel*, 231 F.3d 1104, 1107 (8th Cir. 2000).

Ultimately, it is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions. *See Finch*, 547 F.3d at 936 ("The ALJ is charged with the responsibility of resolving conflicts among medical opinions."); *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002) ("It is the ALJ's function to resolve conflicts among 'the various treating and examining physicians.'") (citing *Bentley*, 52 F.3d at 785-87).

### 2.    *Analysis*

The ALJ gave "some weight" to the opinions provided by non-examining state agency medical consultants. AR 26. Contrary to Olson's argument, this did not amount to controlling weight. The ALJ found that the sitting and standing limitations determined by the state agency consultants were consistent with the medical record and Olson's conservative treatment. *Id.* By contrast, the ALJ found that the lifting limitations reported by the state agency consultants were not consistent with the longitudinal medical picture and did not credit these opinions. *Id.*

The ALJ properly weighed these opinions and provided appropriate reasons for the weight afforded to them. For example, the ALJ cited two portions of the record indicating that Olson's hypertension had been controlled through medication and noted that this illustrated that the state agency physician opinions were consistent with Olson's conservative treatment and medical record as a whole. AR 26. "If an impairment can

be controlled by treatment or medication, it cannot be considered disabling." *Wildman*, 596 F.3d at 965 (quoting *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004) (quotations omitted)).

Olson notes the ALJ's decision to reject the state agency's finding that he could lift 50 pounds. He does not argue, of course, that the RFC should reflect an ability to lift 50 pounds, but instead argues that the ALJ's rejection of this portion of the state agency's opinion means the entire opinion is suspect. I disagree. An ALJ is not required to accept or reject an entire medical opinion as a whole. *See, e.g.*, *Turley v. Sullivan*, 939 F.2d 524, 527 (8th Cir. 1991) (ALJ did not err in accepting only a portion of a medical opinion). Instead, in fulfilling the ALJ's obligation to resolve conflicts among the various medical opinions, the ALJ is free to conclude that some portions of an opinion are entitled to more weight than others.

I further find that the ALJ properly weighed the opinions of the state agency psychological consultants. The ALJ gave these opinions "some weight," finding that more weight should be given to the opinion of Olson's treating psychiatrist, Dr. Fulton, because of his treatment relationship and the consistency of Dr. Fulton's opinion with his treatment notes. AR 27; 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4). I find no error with this analysis.

Olson argues that Dr. Fulton's statements that Olson "is impaired," "has difficulty sustaining focus" and that his impairment "is continuous," illustrate that Dr. Fulton found Olson did not have the ability to perform simple tasks on a sustained pace required by a work setting. *See* Doc. No. 10 at 13-14. I disagree, as Dr. Fulton's opinion states the exact opposite. Dr. Fulton completed a form that asked him to describe what work activities Olson could perform "**on a regular, SUSTAINED BASIS**." AR 447 (emphasis in original). The document stated: "On a 'sustained basis' is defined as 5 consecutive 8 hour days per week, week after week, for at least 6 consecutive months." *Id.* Within those parameters, Dr. Fulton opined that Olson could perform one or two

step (or simple tasks) on a sustained basis and reported no particular level of expected absences. AR 447-48.

The ALJ's finding as to Olson's potential diagnosis of fibromyalgia is also supported by substantial evidence. Specifically, the ALJ found that Olson's alleged fibromyalgia was not a medically determinable impairment established by a diagnosis from an acceptable medical source and supported by medical findings. AR 19. The record supports this finding.

The Eighth Circuit has held that the existence of an impairment such as fibromyalgia does not automatically warrant a finding that the claimant is disabled. *See Perkins v. Astrue*, 648 F.3d 892, 899-900 (8th Cir. 2011). "[A] conclusory statement— that is, a statement not supported by medical diagnoses based on objective evidence—will not support a finding of disability." *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003) (finding that a letter listing a diagnosis did not, without objective medical evidence, support a finding of disability); *see also Forehand v. Barnhart*, 364 F.3d 984, 987 (8th Cir. 2004) (noting that the treating source diagnosed claimant with fibromyalgia and repeated the diagnosis on several occasions). Here, state agency physicians Dr. Wright and Dr. Davis both listed fibromyalgia in the "impairment diagnosis" section of their reports. AR 83, 99. However, "[ALJ's] are not bound by any findings made by State agency medical or psychological consultants or other program physicians or psychologists." 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i).

In addition, Dr. Veit reported that Olson "is also having quite a bit of trouble with his fibromyalgia as diagnosed by Dr. Wang." AR 387. Again, however, this is a conclusory medical statement, unsupported by any testing or objective evidence. Finally, while Dr. Wu reported the results of a fibromyalgia control point examination, she did not explain how, if at all, the potential impairment of fibromyalgia affected Olson's ability to function in the work place. AR 375-79.

Olson indicated he was taking only Aleve for the pain associated with his potential fibromyalgia symptoms. AR 45; *see Milam v. Colvin*, 794 F.3d 978, 985 (8th Cir. 2015) (quoting *Black*, 143 F.3d at 388) (a conservative course of treatment, including medication, suggests the absence of disabling pain). He acknowledged that he had not been diagnosed with fibromyalgia and that it "[w]as not really a official diagnosis . . . that it could be fibromyalgia." AR 43. He further stated that "[t]hey tested me for [fibromyalgia], but the lady told me I didn't have it, but my doctor thinks I could, so." AR 45. Based on the lack of evidence supporting a diagnosis of fibromyalgia, let alone establishing that it is a disabling impairment, I find no error in the ALJ's evaluation of this issue.

Olson next contends that the ALJ failed to give proper weight to Dr. Veit's opinion. The ALJ found that the record does not support Dr. Veit's opinion as to Olson's need for excessive breaks and work absences. AR 25. With regard to breaks, the medical source statement asked Dr. Veit to express an opinion as to the "[n]umber, frequency and duration of unscheduled breaks in 8 hour day." AR 445. He wrote "at least 3/hr." *Id.* This could mean either three breaks of one hour each during an eight-hour day or three breaks each hour. Either outcome is rather extreme, as Olson would need either (a) at least three hours of break time each day or (b) at least 24 breaks, each of unspecified duration, each day.[3] As for absences, Dr. Veit predicted at least four per month. AR 445.

The ALJ did not err in finding that Dr. Veit's opinion about unscheduled breaks and absences is not supported by the record. There is no doubt that Olson reported neck and shoulder pain, particularly during the spring of 2013. AR 424-35. However, other than ordering an MRI, Dr. Veit maintained a course of conservative treatment (pain

---

[3] Twenty-four breaks of just five minutes each would add up to two hours of unscheduled breaks each workday.

medication and one injection). AR 424-29. In addition, Olson's activities of daily living suggest that he has fewer restrictions than those reported by Dr. Veit. Among other things, Olson cared for himself, did chores at a farm, did his own laundry and mowed with a riding mower. AR 24, 48, 55, 245-46, 267-68. In March 2013, he cancelled an appointment with Dr. Veit because he was "helping cars out of ditch." AR 436. Moreover, Olson testified that the primary reason for his alleged disability was depression and agoraphobia, not pain. AR 43, 49-50. The ALJ was entitled to conclude that Dr. Veit's opinion as to the need for excessive breaks and absences is not supported by the record.

In addition, the ALJ did not err in finding that Dr. Veit's findings as to Olson's standing and walking limitations are not supported by the medical evidence. Dr. Veit found that Olson could not stand for more than 30 minutes at a time, for a total of no more than 2 1/2 hours each workday. AR 445. Dr. Veit also found that Olson could not walk more than 200 feet at a time, no more than four times, during a workday. *Id.* However, his examination notes reflect a balanced gait and no abnormalities. AR 380, 385, 424, 426, 430 and 440. The notes contain no evidence suggesting that Olson had problems walking or standing. Indeed, the same medical source statement that includes Dr. Veit's walking and standing restrictions reports no diagnosis other than shoulder strain and states that Olson has no limits on the use of his lower extremities. AR 445. Thus, the ALJ was entitled to find that Dr. Veit's opinion as to standing and walking restrictions was internally inconsistent in addition to being inconsistent with his treatment notes.

In short, I find no error in the ALJ's evaluation of Dr. Veit's opinion. An ALJ is entitled to discredit a treating-source opinion that is not well-supported by medically acceptable clinical and laboratory diagnostic techniques. *Prosch*, 201 F.3d at 1014. The

ALJ provided good reasons, supported by the record as a whole, for discounting portions of Dr. Veit's opinion.[4]

Finally, Olson argues that the ALJ failed to consider the opinion of Dr. Wu, the one-time consultative examiner. The ALJ did not ignore that opinion. Indeed, the ALJ noted Dr. Wu's findings in the course of explaining her RFC determination. AR 23. Moreover, to the extent Dr. Wu's report listed limitations, she simply repeated Olson's own subjective statements about those limitations. AR 376 (commencing a discussion of limitations with the words "He said"). By contrast, Dr. Wu's objective findings, based on her examination of Olson, indicated a normal gait, full range of motion and full strength of all extremities and the cervical and lumbar spine. AR 377-78. These objective findings support the ALJ's RFC determination. Thus, while the ALJ should have stated the specific level of weight she afforded to Dr. Wu's opinion, I find no reversible error. It is clear that the ALJ was aware of the opinion and the opinion is consistent with the ALJ's RFC.

The ALJ properly considered the medical opinion evidence of record and fulfilled her obligation to resolve any conflicts among those opinions. I find that her evaluation of the opinion evidence is supported by substantial evidence.

## C.    *Credibility*

### 1.    *Applicable Standards*

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. Accordingly, the court must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams v. Barnhart*, 393 F.3d

---

[4] The ALJ also properly rejected Dr. Veit's comments to the effect that Olson deserved disability benefits, as such statements address an issue that is reserved for the Commissioner and are not medical opinions. *Ellis v. Barnhart*, 392 F.3d 988, 994 (8th Cir. 2005).

798, 801 (8th Cir. 2005). An ALJ may discount a claimant's subjective complaints if there are inconsistencies in the record as a whole. *Id.*

To determine a claimant's credibility, the ALJ must consider:

(1)    the claimant's daily activities;

(2)    the duration, intensity, and frequency of pain;

(3)    the precipitating and aggravating factors;

(4)    the dosage, effectiveness, and side effects of medication; and

(5)    any functional restrictions.

*Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). "Other relevant factors include the claimant's relevant work history, and the absence of objective medical evidence to support the complaints." *Mouser*, 545 F.3d at 638 (quoting *Wheeler v. Apfel*, 224 F.3d 891, 895 (8th Cir. 2000)). An ALJ may not discount a claimant's subjective complaints solely because they are unsupported by objective medical evidence, *Halverson v. Astrue*, 600 F.3d 922, 931-32 (8th Cir. 2010); rather such evidence is one factor that the ALJ may consider. *Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008). The ALJ need not explicitly discuss each factor, as long as the ALJ acknowledges and considers the factors before discounting the claimant's subjective complaints. *Goff*, 421 F.3d at 791. If an ALJ discounts a claimant's subjective complaints, he or she is required to "detail the reasons for discrediting the testimony and set forth the inconsistencies found." *Ford*, 518 F.3d at 982 (quoting *Lewis*, 353 F.3d at 647).

## 2.    *The ALJ's Reasoning*

In finding Olson's subjective complaints to be not entirely credible, the ALJ referenced his conservative treatment history and use of over-the-counter medications for pain. AR 23. The ALJ also discussed Olson's activities of daily living, noting that Olson does his own chores, laundry and grocery shopping, mows a three-acre lawn and has

assisted cleaning out a farmhouse. AR 20. The ALJ found that activities of this nature are not consistent with claims of disabling pain. AR 24. However, the ALJ did not reject all of Olson's subjective complaints. She found a greater limitation as to social interaction than did any of his treating sources, as she formulated an RFC that included limitations in interacting with the general public and co-workers. AR 22.

### 3. Analysis

The ALJ's stated reasons for discounting Olson's credibility are valid and are supported by evidence in the record. Olson's treatment was conservative, involving chiropractic visits and over-the-counter medication for pain. A conservative course of treatment, including medication, suggests the absence of disabling pain. *See Milam*, 794 F.3d at 985 (8th Cir. 2015) (quoting *Black*, 143 F.3d at 388). Olson's activities of daily living also weigh against a finding of disabling pain. The Eighth Circuit has held that "cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug v. Astrue*, 578 F.3d 805, 817 (8th Cir. 2009).

As noted above, I must "defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Guilliams*, 393 F.3d at 801. They are. As such, I find no error in the ALJ's assessment of Olson's credibility.

### VI. CONCLUSION

After review of the entire record, and in accordance with the standard of review I must follow, I conclude that the ALJ's determination that Olson was not disabled within the meaning of the Act is supported by substantial evidence in the record. Accordingly, the decision of the Commissioner is **affirmed**. Judgment shall enter in favor of the Commissioner and against Olson.

26

**IT IS SO ORDERED.**

**DATED** this 8th day of July, 2016.

_____
LEONARD T. STRAND
UNITED STATES DISTRICT JUDGE